1  SEYFARTH SHAW LLP
   KENNETH L. WILTON (SBN 126557)
2  E-mail: kwilton@seyfarth.com
   2029 Century Park East, Suite 3500
3  Los Angeles, California 90067-3021
   Telephone:  (310) 277-7200
4  Facsimile:   (310) 201-5219

5  CARRIE P. PRICE (SBN 292161)
   E-mail: cprice@seyfarth.com
6  560 Mission Street, Suite 3100
   San Francisco, California 94105-2930
7  Telephone:  (415) 397-2823
   Facsimile:   (415) 397-8549
8
   Attorneys for Plaintiff
9  ALLERGAN, INC.

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                   SOUTHERN DIVISION

13

14  ALLERGAN, INC.,                    Case No.  8:17-cv-00619

15              Plaintiff,             COMPLAINT FOR:

16      v.                             INFRINGEMENT OF FEDERALLY
                                       REGISTERED TRADEMARKS
17  DERMAVITA LIMITED PARTNERSHIP,     (15 U.S.C. § 1114);
    DIMA CORP. S.A. and
18  KBC MEDIA RELATIONS LLC,           FEDERAL UNFAIR
                                       COMPETITION
19              Defendants.            (15 U.S.C. § 1125(a));

20                                     FEDERAL DILUTION
                                       (15 U.S.C. § 1125(c));
21
                                       FEDERAL FALSE ADVERTISING
22                                     (15 U.S.C. § 1125(a)); AND

23                                     CONSPIRACY

24                                     **DEMAND FOR JURY TRIAL**

25

26

27

28

---

COMPLAINT OF ALLERGAN, INC.

# COMPLAINT

Plaintiff Allergan, Inc. ("Allergan"), through undersigned counsel, hereby alleges as follows:

## NATURE OF THE CASE

1.      In 2007, Allergan introduced to the United States market an injectable pharmaceutical product called JUVÉDERM, a dermal filler administered by healthcare professionals and indicated for improving the appearance of facial lines and wrinkles to yield a more youthful appearance.  Since 2007, Allergan has added a number of products under its JUVÉDERM family of marks, referred to collectively herein as the "JUVÉDERM Products."  The JUVÉDERM Products have been hugely successful: sales in the United States have exceeded *two billion dollars* since 2007.

2.      On March 17, 2017, in the face of Allergan's undisputed and incontestable ownership rights in its JUVÉDERM trademark in the United States, Defendant Dima Corp. S.A. announced via a press release issued by Defendant KBC Media Relations LLC, that it had acquired a "full license" from Defendant Dermavita Limited Partnership "to develop and market cosmetics products under the Juvederm trademark" and that it intended to immediately introduce skincare products that would be available in "2000+ doctor's offices in the United States by June 2017."  Defendants' false and misleading announcement has already caused confusion in the marketplace, and Defendants' infringement will cause confusion among doctors and users of Allergan's JUVÉDERM products, irreparably harming Allergan.

3.      Also, Defendant Dermavita Limited Partnership currently maintains websites at WWW.DERMAVITA.NET and WWW.DERMAVITA-ONLINE.COM that market products under the "Juvederm" name.  On the WWW.DERMAVITA.NET website, Dermavita Limited Partnership markets these products in the United States, to United States consumers, under the heading "USA Offers."

4.      This suit seeks to immediately address the impact of Defendants' brazen decision to ignore and interfere with Allergan's intellectual property rights, and to protect

2

the consuming public, by prohibiting Defendants from marketing and selling a product in the United States under an identical, and obviously confusingly-similar, "Juvederm" mark.

## JURISDICTION AND VENUE

5.     This is an action for trademark infringement, unfair competition, dilution and false advertising under the United States Trademark Act, 15 U.S.C. §§ 1051, *et seq.*, as amended, and for conspiracy under California common law.  Allergan's claims for infringement of its federally registered trademarks, federal unfair competition, federal trademark dilution and federal false advertising arise under the United States Trademark Act, and are within the subject matter of the jurisdiction of this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  Allergan's claim for relief for conspiracy under the common law of the State of California is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §§ 1338(b) and 1367.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because this judicial district is where the claim arose and where Allergan is suffering harm.

7.     On information and belief, Dermavita Limited Partnership develops, manufactures, markets, distributes, and sells "cosmeceutical"[1] products for sale and use throughout the world, including the United States and the State of California.

8.     This Court has specific personal jurisdiction over Dermavita Limited Partnership because Dermavita Limited Partnership has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious act of trademark infringement and the other claims herein alleged that have led to foreseeable harm and injury to Allergan in the State of California.

---

[1] As noted by the U.S. Food & Drug Administration, "[w]hile the Federal Food, Drug, and Cosmetic Act (FD&C Act) does not recognize the term 'cosmeceutical,' the cosmetic industry uses this word to refer to cosmetic products that have medicinal or drug-like benefits."  *See* HTTPS://WWW.FDA.GOV/COSMETICS/LABELING/CLAIMS/UCM127064.HTM (last visited April 5, 2017).

9.      On information and belief, Dima Corp. S.A. is a licensee of Dermavita Limited Partnership and develops, markets, distributes, and sells cosmeceutical products for sale and use, specifically to the United States and the State of California.

10.      This Court has specific personal jurisdiction over Dima Corp. S.A. because Dima Corp. S.A. has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious act of trademark infringement and the other claims herein alleged that have led to foreseeable harm and injury to Allergan in the State of California.

11.      On information and belief, KBC Media Relations LLC has been retained by Dermavita Limited Partnership and/or Dima Corp. S.A. to market and promote the sale of their cosmeceutical products, and has taken affirmative steps to market and promote the sale of those products in the United States and the State of California.

12.      This Court has specific personal jurisdiction over KBC Media Relations LLC because KBC Media Relations LLC has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious act of trademark infringement and the other claims herein alleged that have led to foreseeable harm and injury to Allergan in the State of California.

## THE PARTIES

13.      Plaintiff Allergan is a Delaware corporation with a place of business at 2525 Dupont Drive, Irvine, California 92612.

14.      On information and belief, Defendant Dermavita Limited Partnership ("Dermavita") is a limited partnership organized and existing under the laws of the country of Lebanon, with places of business at Spears str., Al Itihad building. Floor 6, Mussaitbeh, Al Sanayeh Beirut, Lebanon and/or Corniche El-Mazraa, Main Road Lebanon & Gulf Bank Building, 4th Floor, Beirut, Lebanon.

15.      On information and belief, Defendant Dima Corp. S.A. ("Dima Corp.") is a corporation organized and existing under the laws of the country of Luxembourg, with a place of business at 98, rue de Bonnevoie, L-1260 Luxembourg.

4

16.     On information and belief, Defendant KBC Media Relations LLC ("KBC Media") is a limited liability company organized and existing under the laws of the State of New Jersey, with a place of business at 230 Kings Highway East, Suite 121, Haddonfield, New Jersey, 08033.

## FACTUAL BACKGROUND

### Allergan Owns The Family Of Famous JUVÉDERM Marks.

17.     Allergan and its subsidiaries manufacture, develop, sell and advertise an extensive array of pharmaceutical products and medical devices, including injectable dermal fillers indicated to reduce the appearance of facial lines and wrinkles and create a more youthful appearance.

18.     Since at least 2004 in Europe, and since at least 2007 in the United States, Allergan and its subsidiaries and predecessors-in-interest have continuously used JUVÉDERM-formative marks (the "JUVÉDERM Marks") in connection with a line of injectable dermal fillers (the "JUVÉDERM Products").  Allergan's predecessors-in-interest began marketing the JUVÉDERM Products under the JUVÉDERM Mark as early as 2001.

19.     The primary active ingredient in Allergan's JUVÉDERM Products is hyaluronic acid.

20.     Since their introduction, Allergan's JUVÉDERM Products have been extremely successful.  The JUVÉDERM Products are approved in 112 countries, and more than 34 million units have been sold worldwide.

21.     Allergan directly, and through its subsidiaries, owns all right, title and interest in and to the JUVÉDERM Marks globally, as well as the following United States registrations of its JUVÉDERM Marks on the Principal Register:

      a.  Registration No. 3,706,974, granted November 3, 2009, for the mark JUVEDERM in International Class 5 for "pharmaceutical preparations for the treatment of glabellar lines, facial wrinkles, asymmetries and defects and

conditions of the human skin, all to be sold and marketed only to licensed physicians, surgeons, and healthcare professionals."

b. Registration No. 4,380,506, granted August 6, 2013, for the mark JUVEDERM VOLIFT in International Class 5 for "Pharmaceutical preparations for the treatment of glabellar lines, facial wrinkles, asymmetries and defects and conditions of the human skin; biological dermal implants, namely, visco-supplementation solutions for filling wrinkles."

c. Registration No. 4,380,507, granted August 6, 2013, for the mark JUVEDERM VOLBELLA in International Class 5 for "Pharmaceutical preparations for the treatment of glabellar lines, facial wrinkles, asymmetries and defects and conditions of the human skin; biological dermal implants, namely, visco-supplementation solutions for filling wrinkles."

d. Registration No. 4,481,317, granted February 11, 2014, for the mark JUVEDERM VOLUMA in International Class 5 for "Pharmaceutical preparations for the treatment of glabellar lines, facial wrinkles, asymmetries and defects and conditions of the human skin; biological dermal implants, namely, visco-supplementation solutions for filling wrinkles."

22.    Each of the foregoing registrations is valid and subsisting, and copies of the certificates of registration for each are attached hereto as Exhibit A and incorporated herein by reference.

23.    In total, Allergan currently owns applications to register and/or registrations of more than 220 JUVÉDERM-formative marks in nearly 100 countries.

24.    Between 2007 and 2016, sales in the United States of the JUVÉDERM Products exceeded $2.17 billion dollars.

25.    Similarly, through 2015, sales of the JUVÉDERM Products in the European Union exceeded $900 million dollars.

26.    Between 2007 and 2016, the JUVÉDERM Products were supported by more than $122 million dollars in advertising in the United States.

6

27.    As a result of Allergan's extensive use and promotion of the JUVÉDERM Marks in connection with the JUVÉDERM Products and their indications, and the quantity of sales of the JUVÉDERM Products, the JUVÉDERM Marks have become famous in the United States, and became famous in the United States long before Defendants commenced the infringing acts complained of herein.

28.    The JUVÉDERM Marks, and the goodwill associated therewith, are of substantial value to Allergan both in the United States and globally.

### DERMAVITA'S UNLAWFUL ACTIVITIES

### Dermavita Had Knowledge Of Allergan's Rights In The JUVÉDERM Marks.

29.    By reason of Allergan's ownership of United States trademark registrations for the JUVÉDERM Marks, at the time it commenced the activities complained of herein, Dermavita had, at minimum, constructive notice of Allergan's rights in and to the JUVÉDERM Marks, and on information and belief, had actual knowledge of Allergan and Allergan's rights in and to the JUVÉDERM Marks.

### Dermavita Has Intentionally Infringed Allergan's JUVÉDERM Marks.

30.    On information and belief, Dermavita was incorporated on May 3, 2007.

31.    Beginning in early 2015, Dermavita commenced an intentional, calculated campaign to systematically trade off, and/or dilute, the goodwill associated with Allergan's JUVÉDERM Marks. Dermavita's campaign has been wide-ranging, and includes, without limitation:

    a. adopting "Juvederm" as a mark (the "Infringing Mark");

    b. using the Infringing Mark as a mark on its websites and offering for sale and selling products related to Allergan's JUVÉDERM Products under the Infringing Mark (the "Accused Products");

    c. on information and belief, licensing use of the Infringing Mark to third parties, including without limitation Dima Corp.;

    d. issuing a press release announcing its intention to introduce and widely distribute "Juvederm" cosmeceutical products into the United States by June

2017, actions that inevitably will confuse the relevant consuming public into believing that Dermavita, Dima Corp. and their Accused Products are in some manner associated or affiliated with Allergan and the JUVÉDERM Marks and Products, when they are not;

    e.  developing and publicizing a "Juvederm" mobile application to promote the Accused Products and purportedly prescribe them to consumers; and

    f.  retaining KBC Media to advertise and promote the Accused Products in the United States.

    32.    These actions by Dermavita and Dima Corp., as described below, represent a willful and unlawful attempt to confuse the public and interfere with Allergan's established business conducted under its JUVÉDERM Marks for the purpose, on information and belief, of trying to force Allergan to expend time, energy and money to stop Dermavita and Dima Corp., either through costly litigation or settlement.

**Dermavita Has Attempted To Register And Has Registered Confusingly Similar Marks.**

    33.    On April 30, 2015, Dermavita filed trademark application No. 014016737 in the European Union Intellectual Property Office ("EUIPO") to register the mark "JUVEDERM" for cosmetic and anti-wrinkle preparations and, purportedly, services related to those goods. Allergan, through one of its subsidiaries, is seeking to cancel this registration.

    34.    On November 11, 2015, Dermavita filed another trademark application with the EUIPO to register the mark "JUVEDERM" for pharmaceutical preparations, medical devices, plastic bags, and training services in the fields of medicine, cosmetics and aesthetics.  This application was assigned No. 014790182.  Allergan, through one of its subsidiaries, has opposed this application.

    35.    On June 17, 2015, Dermavita filed Application Serial No. 79173350 (the "'350 Application") with the United States Patent and Trademark Office seeking to register the mark "JUVEDERM" for goods and services in two International Classes.

That application has since been sub-divided into two separate applications. In the '350 Application, Dermavita seeks to register the mark "JUVEDERM" for:

> "Cosmetics for use by the end consumer, namely, cosmetic creams, emulsions, lotions, liquids and solutions being milks, gels and oils for use on the face, body, hands, feet, and neck, all of which for external use only; non-medicated exfoliating cosmetic preparations for the skin, cosmetic skin care preparations, namely, skin peels, cosmetics for smoothing the skin, cosmetics for hair conditioning and care of the hair and scalp; cosmetic sunscreen preparations in the form of emulsions, lotions, milks, gels, and oils; cosmetic preparations for skin whitening, skin whitening creams, hair and nail decolorants for cosmetic purposes, cosmetics for lightening the color of the skin, fair complexion cream" in International Class 3;

36.    In the second application, Application Serial No. 79975292 (the "'292 Application"), Dermavita seeks to register the mark "JUVEDERM" for:

> "Advertising, marketing and promotion services; commercial trading services in the nature of direct marketing services, promotional marketing and representation services for sales to the public sector; providing consumer product information via the Internet; business management analysis, business research and business information management services" in International Class 35.

37.    In all, Dermavita has filed more than 60 applications to register "JUVEDERM"-formative marks in more than 50 jurisdictions worldwide, most of which are being opposed by Allergan or one of its subsidiaries.

**Dermavita Has Offered For Sale And Sold Products Under The Infringing Mark.**

38.    Dermavita operates several websites that offer its products for sale in the United States. For example, as shown on the following page, the site located at the URL WWW.DERMAVITA-ONLINE.COM includes products being offered for sale under the Infringing Mark that bear a striking resemblance to Allergan's JUVÉDERM Products:

**ALLERGAN'S PRODUCT**          **ACCUSED PRODUCT**

          

39.    Another site operated by Dermavita, the site located at the URL WWW.DERMAVITA.NET, includes a page that is specifically directed to offering the Accused Products in the United States:



40.    The "USA Offers" include six separate "Juvederm" products:  "Juvederm NRG Cream," "Juvederm NRG Serum," "Juvederm NRG Mask," "Juvederm Purelife Mask," "Juvederm Hydralift Mask," and "Juvederm EyePerfector."  *See* Exhibit B attached hereto and incorporated herein by reference.

41.    Like Allergan's JUVÉDERM Products, several of the products offered by Dermavita prominently state that they contain "hyaluronic acid," as shown below (highlighting added):

10



Home / USA Offers | USA Offers

## Juvederm NRG Mask: $20.00

**$ 20.00**

**Juvederm NRG Mask**
Soothes and hydrates the skin, giving it a radiant appearance

**Key Ingredients:**
Hyaluronic acid, Collagen, Fucogel®, Aloe Vera, Glycerin

**Indication:**
• Hydrates and nourishes the skin
• Removes dead cells
• Regenerate the cells
• Improves the skin's elasticity and resistance
• Enhances the skin's softness and firmness
• Anti-aging

**Usage:**
Unfold the mask and carefully place it on the cleansed face, avoiding eye and mouth contours. Remove after 20 minutes

42.   Notably, while many of the Accused Products are applied topically, on information and belief, Dermavita's "mesotherapy" product is an injectable product sold in vials, which Dermavita also touts as including the same active ingredient as Allergan's JUVÉDERM Products:  hyaluronic acid.

**Dermavita Intends To Immediately Sell Its "Juvederm" Products In The United States.**

43.   On March 17, 2017, Dermavita, together with Dima Corp., issued a press release through a New Jersey-based publicity firm, KBC Media (the "False Press Release", which stated in part:

> DIMA CORP S.A Announces Juvederm Acquisition
> Launching Skincare Lines and App in the USA
>
> DIMA CORP S.A is pleased to announce the acquisition of the Juvederm full license from DermaVita Company, to develop and market cosmetic products under the Juvederm trademark (No

014016737) worldwide, with an **immediate launch** in the United States of America.

\* \* \*

The Juvederm skincare lines will be available exclusively in an anticipated 2000+ doctor's offices across the United States by June, 2017.

For more information, visit: www.juvedermlab.com

*See* Exhibit C, False Press Release (emphasis added).

44.    As of the filing of this Complaint, the False Press Release has been disseminated to several different news and industry outlets, including Yahoo Finance, MarketWired and Business Insider.  True and correct copies of the False Press Release are attached hereto as Exhibit C.

45.    Not only does the False Press Release misleadingly assert that Dima Corp. acquired "Juvederm," it states that "[t]he Juvederm skincare lines will be available exclusively … in doctor's offices."  Similarly, Allergan's JUVÉDERM Products are sold in the United States through healthcare professionals.

46.    Defendants have thus stated, in incontrovertible terms, that they intend to introduce products in the United States under the "Juvederm" mark that compete directly with Allergan's JUVÉDERM Products.

47.    On information and belief, after issuing the False Press Release, KBC Media has been contacting publications that are directed to the consumers of Allergan's JUVÉDERM Products, such as beauty publications, in order to promote the Accused Products.  On information and belief, these communications have included an image of a "post-injection" product, which specifically targets users of injectable dermal fillers, such as users of Allergan's JUVÉDERM Products:



48.    The packaging itself promotes the product as "After Injection Care."  In short, Defendants are intending to offer for sale a product under the "Juvederm" mark that is intended to be used after an injection of Allergan's genuine JUVÉDERM Product.

49.    Given that the Accused Products and Allergan's JUVÉDERM Products will be sold to the same consumers under the identical marks for goods administered by the same professionals during the same type of procedure, consumer confusion is inevitable and has indeed already occurred.  Allergan has already been contacted by a recipient of KBC Media's promotions who was confused whether the Accused Products were affiliated with Allergan's JUVÉDERM Products.

**Dermavita Is Attacking Allergan's Trademark Rights.**

50.    Not only has Dermavita adopted an identical mark for related goods, it has had the audacity to attack Allergan's superior trademark rights.

51.    On January 13, 2017, Dermavita filed a petition before the Trademark Trial and Appeal Board of the USPTO seeking to cancel Allergan's Registration No. 4,380,506 for the mark JUVEDERM VOLIFT.  As grounds for its petition, Dermavita asserted that Allergan is not using the JUVEDERM VOLIFT mark and has abandoned the mark, allegations that are demonstrably false.  Dermavita withdrew this ill-fated petition after Allergan moved to dismiss it as meritless.

52.    This specious attack on Allergan's rights in and to its JUVEDERM VOLIFT mark is another example of the actions Dermavita is taking in an attempt to strip Allergan of the rights it has obtained through its long term use of the JUVÉDERM Marks and its

investment in the JUVÉDERM Products, and to exploit Allergan's preexisting rights for an ulterior purpose.

**Dermavita Is Falsely Advertising The Accused Products As Drugs Without FDA Approval.**

53.    In addition to infringing Allergan's trademark rights, Dermavita also falsely and misleadingly describes the Accused Products by making claims about the products' uses and effectiveness in violation of the federal Food, Drug, and Cosmetic Act (FDCA) (21 U.S.C. § 301, *et seq.*).  On information and belief, the Accused Products are not approved by the Food and Drug Administration (FDA) under the FDCA.  Nonetheless, Dermavita falsely implies that the Accused Products meet the high standards for safety and efficacy mandated by the FDCA, thereby creating consumer confusion regarding the safety and efficacy of the Accused Products.

54.    The FDA has expressed its concern "about drug claims made for products marketed as cosmetics, such as skin care products with anti-wrinkle or anti-aging claims that involve supposed effects on the structure or function of the skin."[2]

55.    On the WWW.DERMAVITA.NET website, Dermavita makes repeated drug claims regarding the Accused Products, including the six products specifically offered for sale in the United States.  For example, Dermavita makes the following claims with regard to various of the Accused Products:  "Boosts cellular metabolism,"  "Stimulates fibroblast growth and collagen synthesis," "Improves vital functions," "Stimulates cells' metabolism," has "Antioxidative properties," is "Anti-inflammatory," "Cleans and absorbs excess sebum," "Removes all impurities and toxins," and "Improves micro circulation and shrinks pores."

56.    These claims on the website located at WWW.DERMAVITA.NET misleadingly represent that the Accused Products are "drugs" as defined by Sections 201(g)(1)(B) and/or 201(g)(1)(C) of the FDCA (21 U.S.C. §§ 321(g)(1)(B), 321(g)(1)(C)), because,

---

[2] *See* WWW.FDA.GOV/COSMETICS/PRODUCTSINGREDIENTS/PRODUCTS/UCM388826.HTM (last visited April 5, 2017).

according to the website, they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease, or are articles intended to affect the structure or any function of the human body. *See* Exhibit B at 4-6, attached hereto and incorporated herein by reference.

## DIMA CORP.'S UNLAWFUL ACTIVITIES

### Dima Corp. Had Knowledge Of Allergan's Rights In The JUVÉDERM Marks.

57. By reason of Allergan's ownership of United States trademark registrations for the JUVÉDERM Marks, and at the time it commenced the activities complained of herein, Dima Corp. had, at minimum, constructive notice of Allergan's rights in and to the JUVÉDERM Marks, and on information and belief, had actual knowledge of Allergan and Allergan's rights in and to the JUVÉDERM Marks.

### Dima Corp. Has Intentionally Infringed Allergan's JUVÉDERM Marks.

58. On information and belief, Dima Corp. was founded on or about October 8, 2009, and is based in Luxembourg.

59. According to the LinkedIn profile for Dima Corp.'s founder and CEO, Dimitri Sillam, Dima Corp. appears to be affiliated with "Juvederm Lab," located in Paris, France. *See* Exhibit D attached hereto and incorporated herein by reference.

60. According to the False Press Release, Dima Corp. has acquired a license from Dermavita to use the "Juvederm" mark to immediately introduce products into the United States in connection with the Infringing Mark, and that the Accused Products will be available at more than 2,000 doctor's offices by June 2017. The False Press Release further states that Dima Corp. will introduce a "free 'Juvederm' app" that will "us[e] photo technology to generate a revolutionary skincare formula for the consumer." *See* Exhibit C.

61. The False Press Release further directs readers to WWW.JUVEDERMLAB.COM, which, on information and belief, is a domain registered by Dimitri Sillam.

62.    Dima Corp. operates a website at the URL WWW.DIMACORP.LU where it advertises that it has invested in "JUVEDERM Worldwide trademark registered in 89 countries."

63.    While Allergan has registered its JUVÉDERM Marks in almost 100 countries, on information and belief, Dermavita has not.  As a result, the statement that appears on Dima Corp.'s website is another example of Dima Corp.'s attempts to confuse the public into believing they are associated with Allergan when they are not.

**Dima Corp. Is Marketing The Accused Products Without FDA Approval.**

64.    The False Press Release advertises the Accused Products with "drug claims."  Specifically, the False Press Release advertises a "4-in-1 customized cream" as the "most active cream in the world with more than 17% active ingredients compared to 3% in the best products."

65.    These claims in the False Press Release misleadingly represent that the Accused Products are "drugs" as defined by Sections 201(g)(1)(B) and/or 201(g)(1)(C) of the FDCA (21 U.S.C. §§ 321(g)(1)(B), 321(g)(1)(C)), because, according to the False Press Release, they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease, or are articles intended to affect the structure or any function of the human body.

66.    The False Press Release also advertises a "free 'Juvederm' app" as "the most advanced high-tech diagnostic mobile application available, using photo technology to generate a revolutionary skincare formula for the consumer."  According to the False Press Release, "[a]fter the consumer takes a selfie and answers a few questions, the algorithm will choose 1 of 2 bases and 4 out of 11 active ingredients in order to create their customized cream."  Dima Corp.'s creation of a "diagnostic" application further confuses and misleads consumers as to the approved drug status of the Accused Products.

67.    Furthermore, mobile applications that analyze images to provide patient-specific diagnoses or treatment recommendations are themselves regulated as medical devices by the FDCA.  Medical devices may not be marketed or sold in interstate

16

commerce without meeting FDA regulatory requirements, which may include premarket approval. FDA has required premarket review and clearance for similar mobile applications that use patient images to generate diagnoses or treatment recommendations.

68.   On information and belief, by offering a "diagnostic" mobile application to generate a "customized" cream, Dima Corp.'s "Juvederm" app offers patient-specific analysis, provides patient-specific diagnosis, and offers treatment recommendations. On information and belief, the "free 'Juvederm' app" advertised in the False Press Release has not been cleared or approved by FDA review of a premarket submission or otherwise classified by the FDA. The False Press Release misleads consumers as to the approved device status of the diagnostic application by advertising a medical device without regulatory approval as required by the FDCA.

## KBC MEDIA'S UNLAWFUL ACTIVITIES

### KBC Media Had Knowledge Of Allergan's Rights In The JUVÉDERM Marks.

69.   By reason of Allergan's ownership of United States trademark registrations for the JUVÉDERM Marks, and at the time it commenced the activities complained of herein, KBC Media had, at minimum, constructive notice of Allergan's rights in and to the JUVÉDERM Marks, and on information and belief, had actual knowledge of Allergan and Allergan's rights in and to the JUVÉDERM Marks.

### KBC Media Has Intentionally Infringed, And Contributed To The Other Defendants' Infringement Of, Allergan's JUVÉDERM Marks.

70.   KBC Media disseminated the False Press Release described above and attached hereto as Exhibit C.

71.   In addition to disseminating the False Press Release, on information and belief, KBC Media has further promoted the Accused Products advertised in the False Press Release by sending emails directly to media outlets announcing the upcoming U.S. launch of the Accused Products and offering samples of them.

72.   On information and belief, on behalf of Dermavita and Dima Corp., KBC Media disseminated the False Press Release and further promoted the Accused Products

through email communications despite its knowledge of Allergan's superior rights in the JUVÉDERM Marks and Allergan's preexisting business manufacturing, marketing and selling the JUVÉDERM Products, and despite its knowledge that Allergan's intellectual property rights would be infringed, and Allergan would be harmed, by KBC Media's dissemination of the False Press Release and the promotion and distribution of the Accused Products in the United States.

73. On information and belief, KBC Media provided its promotional services to Dermavita and Dima Corp. despite knowing of Allergan's superior rights to the JUVÉDERM Marks. On information and belief, KBC Media knew or had reason to know that representations made in the False Press Release were literally false or, at minimum, misleading, and moreover that the Infringing Mark used in connection with the Accused Products promoted by the False Press Release infringed Allergan's JUVÉDERM Marks. As a result of the foregoing, and because KBC Media controlled the dissemination of the False Press Release, KBC Media is subject to both direct and contributory liability under the Lanham Act.

## FIRST CLAIM FOR RELIEF

### Infringement Of Federally-Registered Trademarks Against All Defendants

74. Allergan repeats and realleges the allegations in the preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

75. The Infringing Mark is identical to Allergan's JUVÉDERM Marks, and is used on and in connection with products that are advertised to contain the same active ingredient and purportedly provide similar results as Allergan's JUVÉDERM Products. As a result, the Infringing Mark is confusingly similar to Allergan's JUVÉDERM Marks.

76. On information and belief, Defendants have engaged in the manufacture, offering for sale, and sale of the Accused Products under the Infringing Mark in interstate commerce and/or in commerce affecting interstate commerce.

77.    Defendants' use of the Infringing Mark as a trademark in connection with the manufacture, distribution, advertising, offering for sale and sale of the Accused Products has been without the permission or authority of Allergan.

78.    Defendants' use of the Infringing Mark as a trademark in connection with the manufacture, distribution, advertising, offering for sale and sale of the Accused Products has been with full knowledge of Allergan's rights in and to its JUVÉDERM Marks.  Such acts are without Allergan's authority or consent, are intended to, have and are likely to continue to confuse consumers and members of the trade as to the source of the Accused Products, falsely suggest a connection or association between Allergan and Defendants, and dilute the trademark significance of the JUVÉDERM Marks.

79.    Defendants' unlawful activities have resulted and will continue to result in irreparable harm and injury to Allergan, in that, among other things:  (a) they deceive the relevant consuming public as to the origin of and authorization for the Accused Products; (b) they falsely represent a sponsorship or association between Allergan and Defendants; (c) they deprive Allergan of control over the nature, design and quality of products associated with the JUVÉDERM Marks; (c) they dilute the trademark significance of Allergan's JUVÉDERM Marks; (d) they injure Allergan's relationships with its customers; and (e) they wrongfully trade and capitalize upon Allergan's reputation and goodwill and the commercial value of the JUVÉDERM Marks while simultaneously diminishing it.

80.    Allergan owns the federally registered and famous JUVÉDERM Marks, which Allergan used long before Defendants commenced use of the Infringing Mark in the United States.

81.    Defendants' use of the Infringing Mark as alleged herein constitutes the use in commerce of a reproduction, copy, or colorable imitation of the registered JUVÉDERM Marks in connection with the sale, offering for sale, distribution, and advertisement of the Accused Products, which use is likely to cause confusion, to cause

mistake, or to deceive as to the source or origin of the Accused Products, in violation of 15 U.S.C. § 1114(1).

82.     Allergan has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Infringing Mark, Allergan will continue to suffer irreparable harm in the form of, *inter alia*, loss of control over the goodwill associated with its JUVÉDERM Marks.  Accordingly, Allergan is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of trademark infringement in violation of the Lanham Act.

83.     Pursuant to 15 U.S.C. § 1117(a), Allergan is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct.  At present, Allergan is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

84.     Defendants' conduct makes this an exceptional case under 15 U.S.C. § 1117(a) and, thus, Allergan is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Unfair Competition In Violation Of Federal Law Against All Defendants

85.     Allergan repeats and realleges the allegations in the preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

86.     Defendants' use of the Infringing Mark in connection with the Accused Products as alleged herein constitutes the use in commerce of a word, term, name, symbol, or device, which use is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of Defendants with Allergan, or as to the origin, sponsorship, or approval of the Accused Products or Defendants' commercial activities by Allergan, in violation of 15 U.S.C. § 1125(a)(1).

87.    Allergan has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Infringing Mark, Allergan will continue to suffer irreparable harm in the form of, *inter alia*, loss of control over the goodwill associated with its JUVÉDERM Marks.  Accordingly, Allergan is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of unfair competition in violation of the Lanham Act.

88.    Pursuant to 15 U.S.C. § 1117(a), Allergan is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct.  At present, Allergan is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

89.    Defendants' conduct makes this an exceptional case under 15 U.S.C. § 1117(a) and, thus, Allergan is entitled to an award of attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Dilution In Violation Of Federal Law Against All Defendants

90.    Allergan repeats and realleges the allegations in the preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

91.    Allergan's JUVÉDERM Marks are widely recognized by the general consuming public of the United States as a designation of source of the goods or services of Allergan and have become famous in the United States, as a result of Allergan's exclusive use of the distinctive JUVÉDERM Marks in the United States beginning at least as early as 2007, coupled with its substantial promotion, advertising, and sales of products under the JUVÉDERM Marks.

92.     The JUVÉDERM Marks were famous well before Defendants engaged in the acts alleged herein, and therefore the JUVÉDERM Marks are entitled to protection from dilution under 15 U.S.C. § 1125(c).

93.     Defendants' use in commerce of the Infringing Mark in connection with the Accused Products is likely to or has diluted the JUVÉDERM Marks by blurring and/or tarnishment.

94.     Allergan has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Infringing Mark, Allergan will continue to suffer irreparable harm in the form of, *inter alia*, loss of control over the goodwill associated with its JUVÉDERM Marks.  Accordingly, Allergan is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of trademark dilution in violation of the Lanham Act.

95.     Pursuant to 15 U.S.C. § 1117(a), Allergan is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct.  At present, Allergan is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

96.     Defendants' conduct makes this an exceptional case under 15 U.S.C. § 1117(a) and, thus, Allergan is entitled to an award of attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

### Federal False Advertising Against All Defendants

97.     Allergan repeats and realleges the allegations in the preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

98.     Defendants' dissemination of the False Press Release and advertising of the "Juvederm" products and mobile application constitute the use in commerce of a false or

misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of the Accused Products in violation of 15 U.S.C. § 1125(a)(1)(b).

99.     Specifically, on information and belief, the False Press Release conveys the literally false and misleading message to consumers that the Accused Products are in some way affiliated with, sponsored by or connected to Allergan's JUVÉDERM Products when they are not, by failing to distinguish the Accused Products from Allergan's JUVÉDERM Products and by failing to distinguish Defendants Dermavita and Dima Corp. from Allergan, the true owner the JUVÉDERM Marks in the United States.  The statements contained in the False Press Release convey the false impression that Dima Corp. has acquired a license from Dermavita and/or Allergan to sell Allergan's JUVÉDERM Products, which it has not.

100.     Similarly, the False Press Release and the websites operated by Dermavita convey the literally false and misleading message to consumers that the Accused Products are drugs as defined by the FDCA which have not, on information and belief, been approved by the FDA.

101.     Furthermore, the False Press Release conveys the literally false and misleading message to consumers that the "Juvederm" mobile application is a medical device as defined by the FDCA which has not, on information and belief, been approved by the FDA.

102.     On information and belief, the literally false and misleading statements contained in the False Press Release have deceived and have the tendency to deceive consumers as to the nature, quality, characteristics or source of the Accused Products and the "Juvederm" mobile application.  In fact, at least one recipient of the False Press Release contacted Allergan to determine whether the Accused Products promoted in the press release were the JUVÉDERM Products.

103.     On information and belief, the literally false and misleading representations made in the False Press Release are material to consumers in that they are likely to

influence consumers' purchasing decisions.  The JUVÉDERM Products are injectable dermal fillers sold and administered by healthcare professionals, and as such, consumers make their decision to seek treatments with Allergan's JUVÉDERM Products based on their quality and reputation as being manufactured and sold by Allergan, the maker of JUVÉDERM®, BOTOX®, LATISSE® and other high-quality, reputable, popular, and importantly, FDA-approved Allergan products.  As a result, consumers who are deceived by the False Press Release and Defendants' advertising of the Accused Products and "Juvederm" mobile application may be misled into purchasing the Accused Products thinking they are related to or affiliated with Allergan and the JUVÉDERM Products when they are not.

104.    Furthermore, on information and belief, the literally false and misleading representations made in the False Press Release are material to consumers in that they are likely to influence consumers' purchasing decisions in that they will be misled to believe that the "Juvederm" mobile application has been approved by FDA when, on information and belief, it has not.

105.    Allergan has been or is likely to be injured as a result of the false and misleading statements contained in the False Press Release and Defendants' advertising of the Accused Products and "Juvederm" mobile application, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with its products.  Consumers may purchase the Accused Products or use the "Juvederm" mobile application mistakenly believing the Accused Products to be the JUVÉDERM Products, or the "Juvederm" mobile application to be affiliated with Allergan, which will divert sales from Allergan and harm Allergan's reputation and the goodwill associated with its JUVÉDERM Products because the Accused Products are not the genuine JUVÉDERM Products and the "Juvederm" mobile application is not approved or sponsored by Allergan.

106.    As a result of Defendants' dissemination of the false and misleading statements in the False Press Release and Defendants' advertising of the Accused

Products and "Juvederm" mobile application, Allergan has and will continue to suffer irreparable harm in the form of, *inter alia*, loss of control over the goodwill associated with its JUVÉDERM Marks. Accordingly, Allergan is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of false advertising in violation of the Lanham Act.

107. Pursuant to 15 U.S.C. § 1117(a), Allergan is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct. At present, Allergan is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

108. Defendants' conduct makes this an exceptional case under 15 U.S.C. § 1117(a) and, thus, Allergan is entitled to an award of attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### Conspiracy Against All Defendants

109. Allergan repeats and realleges the allegations in the preceding paragraphs of this Complaint, inclusive, as if fully set forth herein.

110. On information and belief, on or before March 17, 2017, the date the False Press Release was disseminated in the United States by KBC Media, Defendants knowingly and willingly conspired and agreed among themselves to commence the above-mentioned improper and unlawful scheme to confuse the public and interfere with Allergan's well-established business conducted under its JUVÉDERM Marks.

111. On information and belief, Defendants knowingly and willingly conspired and agreed among themselves to engage in the acts described above for the purpose of trying to force Allergan to expend time, energy and money to stop Dermavita and Dima Corp. and/or to trade-off the goodwill associated with the JUVÉDERM Products and

Marks and thus entice purchasers of Allergan's JUVÉDERM Products to purchase the Accused Products by mistake.

112.    On information and belief, Dermavita and Dima Corp. did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and the above-alleged agreement.

113.    On information and belief, Dima Corp. furthered the conspiracy by agreeing to be a purported licensee of the Infringing Mark and by agreeing to offer for sale and/or import to the United States products bearing the Infringing Mark.

114.    On information and belief, the last overt act in pursuance of the above-described conspiracy occurred on or about March 17, 2017, when Defendants issued the False Press Release, which was republished through various news media outlets.

115.    As a proximate result of the wrongful acts herein alleged, Allergan has and will suffer irreparable injury, including without limitation, loss of goodwill and reputational injury, and monetary harm in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Allergan, Inc. prays for a judgment as follows:

1.    That Defendants, and all persons in active concert or participation with them, or any of them, who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be preliminarily and then permanently restrained and enjoined from:

      a.    Using the Infringing Mark, Allergan's JUVÉDERM Marks, or any colorable imitation of Allergan's JUVÉDERM Marks, or any designation that is confusingly similar thereto, on or in connection with the advertisement, promotion, offering for sale, sale or distribution of any goods, on or in connection with the advertisement, promotion, offering for sale, sale or rendition of any services, in connection with the conduct of any business, or as part of any domain name at any level;

b.   Using Allergan's JUVÉDERM Marks in any advertising accessible in the United States, that asserts, directly or indirectly, that the Accused Products are in any manner associated with Allergan's JUVÉDERM Products, or from making any false or misleading description of fact, or false or misleading representation of fact, with regard to Allergan's JUVÉDERM Products or any services associated therewith; and

c.   Otherwise competing unfairly with Allergan;

2.    That Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition all labels, signs, prints, packages, wrappers, receptacles, advertisements and copies of websites in hard copy and computer readable form, bearing any of the designations whose use is enjoined under the injunctions prayed for herein, and all plates, molds, matrices, and other means of making the same;

3.    That Defendants be ordered, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve upon counsel for Allergan, within thirty (30) days after the service on Defendants of the injunctions prayed for herein, a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunctions;

4.    That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a) and the common law of California, to pay to Allergan the damages sustained by Allergan as a result of Defendants violations of the Lanham Act, and that the amount be enhanced according to the circumstances of the case;

5.    That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a), to pay to Allergan its attorneys' fees and costs;

6.    That Defendants be ordered to pay to Allergan any other damages as allowable by law, including without limitation, the cost of corrective advertising Allergan will necessarily need to employ to address the inevitable consumer confusion caused by Defendants' unlawful acts;

7.    That Dermavita be ordered to abandon with prejudice the '350 Application and the '292 Application; and

8.      That Allergan be granted such other and further relief as the Court may deem just and proper.

SEYFARTH SHAW LLP

DATED:  April 5, 2017                    By:_____/s/ Kenneth L. Wilton_____
Kenneth L. Wilton
Attorneys for Plaintiff
ALLERGAN, INC.

## **JURY DEMAND**

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, Allergan, Inc. asserts its rights and demand a trial by jury on all issues triable by a jury.

SEYFARTH SHAW LLP

DATED:  April 5, 2017                    By:_____/s/ Kenneth L. Wilton_____
Kenneth L. Wilton
Attorneys for Plaintiff
ALLERGAN, INC.