# DAOU TRANSLATION AND SERVICES
ضو للترجمة والخدمات

Tahouita Bridge – Ghawi Building – ground floor
Tel: 01- 284725 – Fax: 01- 284823 – Gsm: 70/953809 – Email: daouservices@gmail.com

Basic No.     : 83/2011
Decision No.  : 169/2015
Date          : 29 January 2015

## DECISION
## IN THE NAME OF THE LEBANESE PEOPLE

The Civil Court of Appeal in Beirut, Chamber 9, ruling in commercial lawsuits, in its committee constituted of the President (delegated) Joumana KHAIRALLAH and the Counselors Marie ABOU MRAD and Mahmoud MAKIEH (delegated),

**UPON VERIFICATION AND DELIBERATION,**
**AFTER EXAMINING ALL THE RECORDS OF THE LAWSUIT,**

It appears that on 30 July 2013 a decision was issued by the Court from the previous committee resuming until the present date the facts of the lawsuit and the petitions of the appellant ALLERGAN INC. Company and the appellee DERMAVITA PARSEKHIAN & CO. Company stating to accept the appeal in the form and to engage the both parties of certain matters in the content of the decision.

It appears that on 10 December 2013 the appellant presented a list in execution of the preliminary decision stating that the later is a Global Company carrying out since the year 1950 the invention, development and marketing of developed scientific, medical and pharmaceutical products as well as conducting several scientific research in various fields and also marketing of medical and pharmaceutical products. The appellant also stated that it represents more than three billion American dollars for companies of various fields in particular eye care, neurology, medical skin care, plastic surgery, weight loss surgery, urology surgery and it is confirmed in the file that the company has carried out marketing for products such as SURGIDERM, JUVIDERME via CODIREP Lebanese company as detailed in its lists and that the judgment issued in her favor against CODIREP Company is the best proof for same. The appellee presented a manufacturing contract under special motto of cosmetic products bearing the date 15 October 1999 without ratifying same from any official authority in Bulgaria and that the legalizations mentioned on same date back to 14 June 2010 which renders it an unreal date and the latter did not care for the conflict of interest with CODIREP Company known as the exclusive representative of the appellant and in charge of marketing SURGIDERM and JUVIDERME products in the Lebanese markets; consequently benefitting from the reputation of the trademarks appertaining to the appellant which has spent a lot of money for scientific research conducted to develop the products bearing the trademarks and to market same as well as simply register both brands in its name.

The appellant stated that she has previously challenged the invoices and bills presented by the appellee three years after the date of filing the lawsuit stating that these invoices confirm its precedence to the use of the brands, and clearly indicated that these invoices do not prove clearly and affirmatively that the mentioned products in these documents are the same ones subject of the present lawsuit, in addition the invoices have a special signature and not duly ratified. The appellee did not confirm if the Bulgarian company which the latter has dealt with, is the owner of the trademarks subject of the present lawsuit and the appellant insisted that the appellee has used the reputed and known brands to exploit a fame that surpassed the border of the origin country without obtaining a permit to do so as well as promoting the imitation brand unlawfully with the intention of benefitting from the fame of the appellant and without making any effort, which constitutes the act of illegal parasitic rivalry (competition) which disagrees with the principles of honor, honest and ethical trading. The appellant repeated its prior claims.

It appears that on 24 December 2013 the appellee presented a plea in execution of the preliminary decision dated 10 December 2013 hereby presenting an explanation for choosing the registered trademarks and confirmed that her trading business was constituted during the late nineties and that its main object was the manufacture of its products by another specialized party and that these products are cosmetic for external use such as the skin sold directly to the consumer and does not contain any medical or vital products. Her products are different from the products of the appellant company that are used via injection under the skin by specialized medical physicians and not directly to the consumer. The appellee's choice for choosing the names of its brands due to the nature of the product and the appellee explained the form and shape of the three marketed products and also indicated that it has also marketed other products bearing several brands including VITA and DERMA after verifying that there are no products bearing similar brands and that the term DERM derives from dermatology as for the term JUVE derives from the word juvenile which means youth or young age and that the term SURGI derives from the word Surgical i.e. Surgery and the term SURGIDERM is related to skin care similar to plastic surgery as for the term JUVIDERME it relates to the freshness of the skin. Both terms are related to the nature of the product and its purpose of use and any fast research on the web for cosmetic skin care products hundreds and thousands of names will appear including the same terms or terms similar such as Surgilub – juvalid – juvedermis – juvela – Juvenia – surgisvrub; as well, the appellee indicated that the appellant did not present any document regarding the product SURGIDERM with the exception of invoices dating back to the year 2010.

The appellee confirmed that the parasitic rivalry pursuant to the conducted research focuses on the rival carrying out actions to create confusion in the consumer's mind in order to deviate the customers from the merchant who has fallen victim of rivalry and this matter has not occurred to the latter's products and the appellant's products because each company has different customers which means that the marketing of the appellant's products is done from one

professional to another as for the appellee's products they are sold directly to the consumer and the medical physician does not interfere in its use; the name and cover, shape and color of the refilling packages differ from the products of the appellant. The appellee confirmed that it has never manufactured any product or benefitted from any activity carried out by the appellant and that the latter did not market the SURGIDERM Product in Lebanon as for JUVIDERME the appellee confirmed marketing and selling same before the establishment of LEADERM Company owned by the appellant; as well, the appellee confirmed that the manufacture contract was concluded on 15 October 1999 and that the signature of the translator on the translation is official since it was legalized on a later date. The Bulgarian company does not own the trademarks subject of the dispute and that the "appellee" did not receive any competition from selling its products to CODIREP Company since these products are addresses to clients other than the appellee's clients.

The appellee concluded by repeating its prior claims in addition to revoking the appellant's final plea.

It appears that during the session held on 01 July 2014 the agent of both parties recounted their statements and the deliberations were concluded.

It appears that on 03 July 2014 the appellant presented a memo reinstating its claims and indicating the statements mentioned in the appellee's recent plea stating that the latter constitute an acknowledgment from the appellee confirming the use of the appellant company's fame like any other parasites and indicating the untruthfulness of the appellee's statement concerning the different clients of the appellant's. The appellant confirmed that any ordinary consumer trusting the appellant's products and who knows that these products are specialized for a category of specialist medical physician will look forward to purchasing the appellee's imitated products while thinking that the latter fall into the same category of the appellant's.

### IN THE SUIBJECT:

Whereas the company ALIRGAN INC. challenged the preliminary judgment stating to revoke the lawsuit aiming to engage DERMA VITA COMPANY – PARSEKHIAN & SONS to cancel the registered trademarks SURGIERM and JUVIDERME registered in its name for violating the provisions of Articles 73 and 105 of the decision No. 2385 and violating the rules of evidence stipulated in Article 131 of the Civil Code of Procedures,

Whereas the appellee stated that the preliminary judgment adopted the principle of precedence of use and that the company was able to confirm its precedence in using the concerned trademarks which the appellant requests to cancel and in confirmation of same provided a contract signed with the Bulgarian company manufacturing the products including an attestation from the translator confirming the translation on 15 October 1999 which has

[illegible] Mr. PARSEKHIAN does not speak Bulgarian language in which the language of the contract was concluded and the translation was made before signing the contract, which confirms that the legalization on the translation on a later day by the competent authorities renders the translation official,

Whereas the appellant focuses its claim that it has precedence in using the trademarks SURGIDERM and JUVIDERME regarding the appellee after having confirmed that the later has previously registered the mentioned trademarks in the registration department for protection of intellectual and trading company at the Ministry of Economy in Lebanon (the appellee registered the trademarks on 14/03/2007 whereas the appellant did not register the trademarks in Lebanon until 16 May 2017 despite registering same in several countries prior to that).

Whereas despite confirming its precedence in using the trademarks, the appellant insists on engaging the appellee to cancel the registered trademarks from its name by reason of illegal and parasitic competition and rivalry.

Regarding the precedence of use,

Whereas the appellant presented during the preliminary trials evidence of the fact for precedence in using the trademarks as per a contract between the appellant and CODIREP Company signed on 10 April 2004 and an attestation issued by the Manager of LEA.DERM company stating that the latter has authorized a person for entering and marketing the JUVIDERME PRODUCTS in Lebanon on 15 March 2001; as well as providing an attestation confirming the presence of a lawsuit between her and CODIREP Company dated 15 May 2008 which resulted in the issuance of a judgment binding the latter to pay a compensation to Codirep Company as well as invoices addressed to some medical physicians to the address of Cedars Hospital as confirmation for selling Surgiderm Products in 2010.

Whereas it should be noted in the beginning that the contract with CODIREP company and the attestation organized with the manager of LEA.DERM Company concern solely JUVIDERME PRODCUT hereby confirming what the appellant has presented as prove for precedence of use to the SURGIDERM Product by registering same outside Lebanon and invoices for selling the product to a number of medical physicians.

Whereas it should be stated that the registration outside Lebanon does not constitute an evidence for precedence of use for the product SURGIDERM in Lebanon, as for the stipulated invoices indicate after verifying the dates that they were made in 2010 i.e. after the date during which the appellee company registered its trademark; therefore, the argument of the appellant's precedence of use the will not be taken into consideration for using the product

before the date of registration of the appellee's company to the mentioned product which occurred as mentioned above on 14 March 2007,

As for the JUVIDERME PRODUCT,

Whereas the appellee presented a contract signed with a Bulgarian company dated 15 October 1999 and the invoices addressed to the pharmacies, shops and companies the first one dated 22 November 1999. The preliminary judgment relied on these invoices to confirm the appellee's precedence of use for both trademarks subject of the litigation and to revoke the lawsuit filed against same.

Whereas the appellant stated in this concern that the preliminary judgment made a mistake by adopting the contract signed between the appellee and the Bulgarian contract since the date is false in addition to the fact that the stipulated invoices were issued by the appellee itself,

Whereas the fact of precedence of use whether by the appellant or appellee is only a material fact which can be confirmed in various methods and the result due on same depends on the court's estimation of the documents presented by both parties as proof of the fact in favor of their own interest.

Whereas and regardless of the authenticity of the date on the contract signed between the appellee and the Bulgarian company Business and Contracting Commerce as well as several invoices issued by the latter (the first dated 21/12/2000) and the seal and signature of the company as well as the term confirming the payment of its value and that the sold products are SURGIDERM and JUVIDERME, it appears that the appellee presented invoices for selling the mentioned products to some pharmacies, shops and companies (Hamdan Pharmacy on 22/01/1999 and 24/02/2000 – Promotion Services s.a.r.l. on 20/05/2000 and 14/07/2000 and to Van Dyke Cosmetics and Beauty on 19/07/2001) and other invoices,

Whereas after verifying the stipulated invoices and mentioned above, it appears that some of same are signed by the recipient such as the invoice dated 19/07/2001 issued by Van Dyke Cosmetics and Beauty and a number of invoices address to Promotion Services s.a.l. company in addition to the company's signature for receipt and the seal on the invoice (refer to Invoice dated 21/06/2002) which is the standard procedure in trading collaboration upon receiving and delivering the merchandise).

Whereas the court did not take into account the appellant's statement concerning the authenticity of the invoices and [resenting same after three years from the date of filing the lawsuit, since the appellee was not supposed to provide evidence to confirm the precedence of use for the trademarks after having confirmed their registration in the competent Lebanese authorities before the appellant's registration since the timing for providing these documents

was not compatible since the appelle's mission was to refute the claim of the appellant's and the documents presented to confirm the precedence of use.

Whereas the appellant and after having confirmed in the content of the judgment issued between the latter and CODIREP Company for bringing JUVIDERME Products to Lebanon in 2004, however, on the other hand the appellee confirmed selling these products since 2001 via the stipulated invoices signed by the recipient, this signature that the appellant did not challenge which brings the court to take same into consideration that the appellee was precedent in using the trademarks subject of the litigation as well as precedent in registering them before the competent authorities in Lebanon.

Whereas concerning the appellant's claim of illegal rivalry or competition,

Whereas in order to claim use of illegal rivalry or competition, the plaintiff must confirm that the defendant has committed the act of illegal rivalry or competition,

Whereas the appellee, as previously stated, preceded the appellant in registered the trademarks JUVIDERME and SURGIDERM in Lebanon and in light of the appellant's inability to confirm its precedence in using the registered trademarks, the court refutes the claim that the appellee has carried out the act of illegal rivalry or competition,

Whereas by way of extensive research, it appears that the products manufactured by the appellee in Bulgaria under the name of JUVIDERME and SURGIDERM are constituted of crème or powder places on the skin i.e. for external use, whereas the products manufactured by the appellant company are pharmaceutical products injected in the skin and sold specially for medical physicians or specialists in cosmetology and in both cases are not considered as ordinary consumer that purchases the powder or crème to moisturize the skin and limit the wrinkles from pharmacies or shop selling cosmetic products; Consequently, each product has its own private consumer and either product cannot be mistaken for the other; the medical physician is not the ordinary consumer and is knowledgeable enough to verify if the product marketing by the appellee is made by the appellant or not. As for the regular consumer who purchases the product of the appellee is not considered a specialist and has no knowledge of the products used by the medical physicians or specialists neither does he/she knows the producing company therefore cannot be mistaken or confused that the source of the product purchased from the pharmacies or shops selling cosmetic products is the same as the one of the products made to be injected under the skin.

Whereas in light of what has been presented, the court refutes the claim of illegal rivalry or competition rather than a traditional one,

Whereas the appellant's statement that the appellee's actions constitute an act of parasitic rivalry,

Whereas the court pursuant to its decision dated 30 July 2013 assigned both parties to certain matters such as discussing the availability of parasitic rivalry which the appellee claimed in the first place,

Whereas the appellee and in execution of the court's decision confirmed the absence of parasitic rivalry since her customers are not the same as the appellant's and clarified the method of choosing the trademarks registered and confirmed that the terms are derived from word in foreign language indicating skin and surgery. As well, the appellee stated that it has not seen any indication of rivalry to its products from CODIREP Company since the latter markets for different products and the clients of both companies are not the same as well as confirming that the appellee has never once tries to benefit from any activity made by the appellant and that in all cases the appellee began using the trademarks way before the establishment of LEA.DERM Company which rights were transferred to the appellant company. The appellee presented a document confirming that the date of the establishment for LEA.DERM Company is 28 November 2000.

Whereas the appellant, made clear that it attributes to the appellee the fact of benefitting from its efforts and fame since the "consumer whomsoever" thinks that the appellee's products are specialized to be used by medical physicians and became available to the regular consumer which indicates that the parasitic rivalry is based on the same clients,

Whereas the present court has indicated that the appellee's clients are not the same as the appellant's whereas the products produced by the latter are made for the medical physicians and specialists and they are not the same as the appellee's clients and a regular consumer is not aware of the kind of products the medical physicians or specialists use in their work place even if they have underwent a similar treatment; in addition and even if we assume that the appellant's products became popular and famous all over the world, however this fame is limited to the countries mentioned and to a particular category of people using them such as medical physicians and specialists and not the regular consumer that cannot have the appellant's products.

Whereas and pursuant to what has been presented, the court refutes the appellant's claim of parasitic rivalry made by the appellee.

Whereas based on what is mentioned above, the preliminary judgment stating to revoke the lawsuit against the appellee is in its correct legal form for the reasons mentioned above,

reached the above mentioned result explained that it is not necessary to respond to the remaining reasons and claims made by the appellant for being irrelevant and unrelated.

## THEREFORE,

In reference to the decision of the court dated 30 July 2013,

**It is unanimously resolved:**

To revoke the appeal and ratify the preliminary judgment pursuant to what is mentioned in the content and to revoke all additions including the appellant's request to hire technical experts and to judge for harm and damage as well as to engage the appellant all expenses and seize the security as revenue for the treasury.

A decision read and understood in public in Beirut on 29 January 2015.

| | |
|---|---|
| **The clerk** | **The delegated counselor** |
| Ahou Daher | Mahmoud Makieh |
| (Signature) | (Signature) |
| | |
| **The counselor** | **The delegated president** |
| Abou Mrad | Khairallah |
| (Signature) | (Signature) |

==================================================================

*I, Joyce Hani DAOU, Sworn translator hereby confirm that the translation hereto attached is a true and exact rendering in English of the original document.*

قرار

باسم الشعب اللبناني

أساس ٨٣٠/١١ ت
قرار ١٦٩/٢٠١٥
تاريخ ٢٩٠/٢٠١٥

إن محكمة الاستئناف المدنية في بيروت، الغرفة التاسعة، الناظرة في الدعوى تحت بهيئتها المؤلفة من الرئيسة (المنتدبة) جمانه خيرالله والمستشارين ومازي بن مـ ومحمود مكيه (منتدب) ،

لدى التدقيق والمذاكرة،
ولدى الاطلاع على أوراق الدعوى كافة،

تبيّن انه بتاريخ ٢٠١٣/٧/٣٠ صدر قرار عن المحكمة بهيئة سابقة لخص لتاريخ و وقائع الدعوى وطلبات كل من المستأنفة شركة اليغران انك والمستأنف عليها شركة ديرمافيتا بارسخيان وشركاه وقضى بقبول الاستئناف في الشكل وتكليف الفريقين بامور محددة في متن القرار ،

وتبيّن انه بتاريخ ٢٠١٣/١٢/١٠ قدمت المستأنفة لائحة بهذا القرار تبيدي ان بموجب بنود شركة عنية تقوم منذ عام ١٩٥٠ بكشف وتطوير وتسويق مستحضرات العناية الطبية والصيدلانية المتطورة وانها تقوم بأبحاث عنية عديدة في عدة مجالات وانها تسوق مستحضرات طبية وصيدلانية وانها اصبحت تمثل اكثر من ثلثة بليون دولار اميركي لشركات متنوعة الاختصاص في مجالات عديدة ابرزها العناية بالعين وعلم طب الاعصاب والعناية الطبية بالجلد والجراحة التجميلية والجراحة التحسيسية والمجاري البولية وانه ثابت من الملف انها قامت بتسويق مستحضرات Surgiderm و Juviderme وذلك عبر شركة Codirep اللبنانية كما جاء تفصيله في لوائحها وان الحكم الصادر بحقها بوجه شركة Codirep هو خير دليل على ذلك ، وان المستأنف عليها اكتفت بابراز عقد تصنيع تحت شعار خاص لمستحضرات تجميلية يحمل تاريخ ١٩٩٩/١٠/١٥ دون التصديق عليه من أي مرجع رسمي في بلغاريا وان التصديقات الواردة عليه يعود تاريخها الى ٢٠١٠/٦/١٤ مما يجعل من تاريخه تاريخا وهميا وعلى انها لم تكترث لتضارب مصالحها مع مصالح شركة Codirep المعروفة تواترا من انها ممثل المستأنفة الحصري وتسوق مستحضرات Surgiderm و Juviderme في السوق اللبنانية وعلى انها قامت بالتالي بالاستفادة من شهرة العلامتين العائدتين للمستانفة التي بذلت اموالا طائلة ان لناحية الابحاث العلمية التي اجرتها لتطوير المستحضرات التي تحمل هاتين العلامتين وتسويقها بل لجأت بكل بساطة الى تسجيلهما على اسمها ،

واشارت المستأنفة على انه سبق لها و طعنت بالفواتير التي ابرزتها المستأنف عليها بعد ثلاث سنوات على تاريخ تقديم الدعوى والتي تدلي من انها تثبت اسبقية استعمالها للعلامتين واكدت على انها لا تدل بشكل واضح واكيد على ان المنتجات المشار اليها في هذه المستندات هي عينها المنتجات موضوع الدعوى الراهنة فضلا ان الفواتير هي ذي توقيع خاص غير مصادق عليها اصولا ، وان المستأنف عليها لم تثبت ان الشركة البلغارية التي تعاملت معها هي مالكة للعلامتين موضوع الدعوى واصرت المستأنفة على ان

- ٢ -

| | هامش |
|---|---|

المستأنف عليها اقدمت على احتذاء العلامتين المشهورتين شهرة تجاوزت حدود دون الاستحصال على اذن منها وانها اقدمت ايضا على ترويج هذه العلامة وجه حق بنية الاستفادة من شهرة المستأنفة،بدون بذل أي مجهود مما يشكل فعل الطفيلية غير المشروعة التي تتعارض مع مبادىء الشرف والتجارة السليمة و التجارية ، وكررت مطالبها السابقة ،

وتبيّن انه بتاريخ ٢٠١٣/١٢/٢٤ قدمت المستأنف عليها لائحة انفاذا للقرار التمييزي تاريخ ٢٠٣١/١٢/١٠ اعطت بموجبها توضيحا اسبب اختيارها للعلامتين التجاريتين واكدت على انها بنت مشروعها التجاري في نهاية التسعينات وان فكرتها قامت على تصنيع منتجاتها من قبل طرف ثاني متخصص وان منتجاتها هي مستحضرات تجميلية ذات استعمال خارجي على البشرة تباع مباشرة للمستهلك وانها لا تحتوي على أي مكونات طبية او حيوية وانها تختلف عن منتجات الشركة المستأنفة التي تستعمل عن طريق الحقن تحت البشرة من قبل اطباء متخصصين وليس بشكل مباشر للمستهلك ، وان اختيارها للتسميتين يعود لطبيعة المنتج وشرحت المستأنف عليها شكل المنتجات الثلاثة التي تسوقها واشارت الى اقدامها على تسويق مستحضرات اخرى تحمل تسميات كثيرة تتضمن عبارة Derma و Vita بعد ان تاكدت من عدم وجود منتجات تحمل هذه التسمية وان عبارة Dermتنحدر من علم البشرة Dermatologie اما عبارة Juve فان مصدرها آت من كلمة Juvenile التي تعني الحداثة او الفتوة وان عبارة Surgi فمصدرها كلمة Surgical أي الجراحة وان كلمة Surgiderm تفيد علاج البشرة المشابه للجراحة التجميلية اما كلمة Juviderme تعني نضارة البشرة وان التسميتين مرتبطتان بطبيعة المنتوج ووجهة استعماله وانه لو جرى البحث السريع على الشبكة العنكبوتية للمنتجات التجميلية التي تعتني بالبشرة لتبين مئات لا بل ألاف من الاسماء التي تتضمن نفس العبارات او عبارات مشابهة كـ Juvenia- juvela – juvedermis- juvalid- surgilub- surgisvrub ونوهت المستأنف عليها بان المستأنفة لم تبرز أي مستند متعلق بمنتج Surgiderm باستثناء فواتير تعود لعام ٢٠١٠ ،

واكدت المستأنف عليها على ان المزاحمة الطفيلية وفقا للاجتهاد ترتكز على قيام المزاحم باعمال تتوجه الى خلق التباس في ذهن المشتهلك لهدف تحوير الزبائن من التاجر الذي وقع ضحية المزاحمة الامر غير الحاصل بين منتجاتها ومنتجات الشركة المستأنفة لان زبائن كل منهما تختلف عن زبائن الاخرى ، بمعنى ان تسويق منتجات المستأنفة يتم من مهني الى مهني اما منتجات المستأنف عليها تباع الى المستهلك مباشرة ولا يتدخل الطبيب في استعماله وان تسمية وغلاف وشكل ولون عبوات التعبئة يختلف بين منتجاتها ومنتجات المستأنفة واكدت المستأنف عليها على انها لم تقم يوما بتصنيع أي منتج او الاستفادة من أي نشاط تقوم به المستأنفة  وان هذه الاخيرة لم تسوق مستحضر Surgiderm في لبنان اما بالنسبة لمستحضر Juviderme فاكدت المستأنف عليها على تسويقها وبيعه له قبل ان تاسست شركة Leaderm التي تملكتها المستأنفة ، واكدت المستأنف عليها على ان عقد التصنيع تمّ في ١٩٩٩/١٠/١٥ وان توقيع المترجم على الترجمة هو توقيع رسمي طالما جرت المطادقة عليه ولو بتاريخ لاحق ، وعلى ان الشركة البلغارية لا تملك أي من العلامتين موضوع النزاع وعلى انها ( أي المستأنف عليها) لم تلق أي منافسة من بيع شركة Codirep منتجاتها كونها موجهة لغير زبائن المستأنف عليها ،

وخلصت المستأنف عليها مستعيدة طلباتها السابقة مضيفة طلب رد كل ورد في لائحة المستأنفة الاخيرة ،

وتبين انه بتاريخ ٢٠١٤/٨/٣ قمت نسخية مذكرة شددت بها على ما ورد في لائحة المستأنف عليها الاخيرة من قرن مستودة على استفادتها من شهرة الشركة المستانفة كغيرة من لاقوال المستانف عليها من ان زبائنها مختلفين عن زبائن المستهلك العادي الذي يثق بمنتجاتها والتي يعلم انها مخصصة اصبح يتطلع اكثر لشراء منتجات المستأنف عليها المقلدة معتبر المستأنف عليها ،

## في الموضوع :

وحيث ان شركة اليرغان انك تطعن في الحكم الابتدائي الذي قضى الرامية الى الزام شركة دير مافيتا بارسخيان واولاده بشطب Surgiderm وJuviderme المسجلتين على اسمها معيبة عليه المادتين ٧٢ و ١٠٥ من القرار ٢٣٨٥ ومخالفته لقواعد الاثبات المنصوص ١٣١ وما يليها من قانون اصول المحاكمات المدنية ،

وحيث ان المستانف عليها تدلي بان الحكم الابتدائي اخذ بعين تمكنت من اثبات اسبقية استعمالها للعلامتين التي تطلب المستأنفة تاكيدا على صحة اقوالها تبرز العقد الذي وقعته مع الشركة البلغارية المنتجات والمتضمن افادة المترجمة من انها ترجمته بتاريخ توقيعه اي في وهو الامر الذي حصل فعلا بتاريخه كون السيد بارسخيان غير ملم صيغ العقد بها وكان عليه ترجمته قبل التوقيع عليه ، و اكدت على ان الترجمة بتاريخ لاحق من قبل الدوائر المختصة يضفي على الترجمة الرسمي،

وحيث ان المستأنفة تركز ادعائها على ان لها اسبقية بالنسبة للمستأنف عليها بعد ان تبين بين Surgiderm وJuviderme المذكورتين لدى مصلحة تسجيل حماية سبقتها في تسجيل العلامتين المذكورتين لدى مصلحة تسجيل حماية والتجارية في وزارة الاقتصاد في لبنان (تسجيل المستانف عليها للعلامتين ٢٠٠٧/٣/١٤ في حين ان تسجيل المستأنفة للعلامتين لم يتم في ٢٠٠٧/٥/١٦ رغم قيامها بتسجيله في بلدان عديدة قبل ذلك )

وحيث فضلا عن ادلائها باسبقية استعمالها للعلامتين تتمسك المستانف عليها بشطب العلامتين المسجلتين على اسمها باقدامها على غير مشروعة ومزاحمة طفيلية ،

فبالنسبة لاسبقية الاستعمال

حيث ان المستأنفة كانت قد ابرزت في المرحلة الابتدائية اثباتا لواقعة للعلامتين عقدا موقعا بينها وبين شركة Codirep وقعت عليه بتاريخ

٢٠٠١/٣/١٥ كما ابرزت فذة ..... ..... ..... ..... .....
بتاريخ ٢٠٠٨/٥/١٥ اسفرت عن صدور حكم نزع ..... بيع ..... .....
وابرزت كذلك فواتير موجهة لبعض الاطباء على عنوان مستشفى .....
مستحضر Surgiderm وذلك عام ٢٠١٠ ،

وحيث تجدر الملاحظة باديء ذي بدء ان العقد مع شركة Codirep .....
المنظمة مع مديرة شركة LEA.Derm يتناولان فقط مستحضر .....derme
بحيث يكون ما قدمته المستانفة من اثبات بالنسبة لاسبقية استعمالها لمستحضر
Surgiderm هو تسجيلها له خارج لبنان وفواتير بيعها له لعدد من الاطباء ،

وحيث من النافل القول ان التسجيل خارج لبنان لا يشكل دليلا على اسبقية استعمال
مستحضر Surgiderm في لبنان ، اما الفواتير المبرزة فيتبين بعد التدقيق بتواريخها انها
تعود لعام ٢٠١٠ اي لما بعد تاريخ حصول تسجيل الشركة المستانف عليها لعلامتها ، فلا
يسمع بالتالي اقوال المستانفة لجهة اسبقية استعمالها للمستحضر المذكور قبل تاريخ تسجيل
الشركة المستانف عليها للعلامة المبحوث فيها والحاصل كما ذكر اعلاه بتاريخ
٢٠٠٧/٣/١٤ ،

اما بالنسبة لمستحضر Juviderme ،

وحيث ان المستانف عليها ابرزت عقدا موقعا مع شركة بلغارية مؤرخ بتاريخ
١٩٩٩/١٠/١٥ وفواتير موجهة لصيدليات ومحلات وشركات، اولى يحمل تاريخ
١٩٩٩/١١ وقد استند الحكم الابتدائي على هذه الفواتير للقول بثبوت اسبقية استعمال
المستانف عليها للعلامتين موضوع النزاع ورد الدعوى الموجهة ضدها ،

وحيث ان المستانفة تدلي بهذا الخصوص بان الحكم الابتدائي اخطأ باعتماده على
الموقع بين المستانف عليها والشركة البلغارية كون تاريخه ليس بتاريخ صحيح فضلا عن
ان الفواتير المبرزة صادرة عن المستانف عليها بالذات ،

وحيث ان واقعة اسبقية الاستعمال سواء من جانب الجهة المستانفة او من جانب
المستانف عليها لا تعدو كونها مجرد واقعة مادية يمكن استثباتها بمختلف الطرق ، ونتيجة
التي تترتب على ذلك تتوقف على مدى تقدير المحكمة لما قدمه كل من الفريقين من ثبت
على الواقعة التي يدعيها لمصلحته ،

وحيث وبصرف النظر عن صحة تاريخ العقد الموقع من المستانف عليها مع
الشركة البلغارية Business and contracting commerce وما صدر عن
هذه الاخيرة من فواتير عدة ( اولها يعود تاريخه الى ٢٠٠٠/١٢/٢١ ) وورد فيها ختم
وتوقيعها وعبارة تفيد عن تسديد قيمتها وعلى ان البضاعة المباعة هي مستحضرات
Surgiderm وJuviderme ، يتبين ان المستانف عليها ابرزت فواتير بيع
للمستحضرين المذكورين لبعض الصيدليات والمحلات والشركات (لصيدلية حنا
تاريخ ١٩٩٩/١/٢٢ و٢٠٠٠/٢/٢٤ ولشركة بروموشيون سرفيسز ش.م.م. تاريخ
٢٠٠٠/٥/٢٠و٢٠٠٠/٧/١٤ و لـ Van Dyke cosmetics and beauty تاريخ
٢٠٠١/٧/١٩) وغيرها من الفواتير ،

appenant .....
products bearing the trademarks and to market same as we as .....
its name.

- ٥ -

| | هـامـش |
|---|---|

وحيث بعد التدقيق بالفواتير المبرزة والمشار اليها اعلاه يتبين ان [...] عليها من قبل المستلم كالفاتورة تاريخ ٢٠٠١/٧/١٩ الصادرة باسم cosmetics and beauty و عدد من الفواتير الموجهة لشركة بروموتـ[...] ش.م. التي بالاضافة الى توقيعها على الاستلام وضعت ختمها على الفاتورة ( على سبيل المثال فاتورة تاريخ ٢٠٠٢/٦/٢١ ) وهو الاجراء المتعارف عليه في التجاري عند تسليم واستلام البضاعة ،

وحيث لا يعتد باقوال المستأنفة ان ما يثير الشك حول صحة هذه الفواتير هو [...] بعد ثلاث سنوات على تاريخ تقديم الدعوى اذ انه لم يكن من المفترض على [...] عليها ان تبادر هي إلى تقديم ما يثبت اسبقية استعمالها للعلامتين بعد ان ثبت تسجيلـ[...] لدى المراجع اللبنانية المختصة قبل حصول التسجيل من قبل المستأنفة بحيث [...] ابرازها لهذه المستندات عندما كان يفترض عليها دحض ـــ ما قدمته المستأنفة مستندات لاثبات اسبقية استعمالها ،

وحيث ان المستأنفة وإن كان ثبت من مضمون الحكم الصادر بينها وبين [...] Codirep انها ادخلت مستحضرات Juviderme الى لبنان عام ٢٠٠٤ غير [...] جهة مقابلة اثبتت المستأنف عليها بيعها لمستحضراتها منذ العام ٢٠٠١ من خلال [...] المبرزة والموقع عليها من مستلميها ، هذا التوقيع الذي لم تطعن به المستأنفة من يد المحكمة على الاخذ بها واعتبار ان المستأنف عليها كانت سباقة في استعمال العلامتـ[ين] موضوع النزاع ، كما كانت سباقة في تسجيلهما لدى المراجع المختصة في بـ[...]

وحيث بالنسبة لادلاء المستأنفة بالمزاحمة غير المشروعة .

وحيث للقول بتوافر عنصر المزاحمة غير المشروعة لا بد من ان يكون من [...] عليه بهذا العمل قد اقترف عمل المزاحمة المشكو منه ،

وحيث ان المستأنف عليها، كما سبق البيان ،هي التي سبقت المستأنفة في [...] علامتي Juviderme و Surgiderm في لبنان وفي ضوء عدم ثبوت سبقية استعـ[مال] المستأنفة للعلامتين لا مجال للقول باقتراف المستأنف عليها عمل المزاحمة .

وحيث وعلى سبيل الاستفاضة في البحث ، يتبين ان المنتجين اللذين تصنـ[عهما] المستأنف عليها في بلغاريا تحت اسم Juviderme و Surgiderm هما كـ[ريم] كريم او مسحوق يوضع على البشرة أي لهما استعمال خارجي ، في حين ان مستحضـ[رات] اللذين تصنعهما الشركة المستأنفة هما مستحضران صيدلانيان تحقن بهما بشرة [...] مخصصان للبيع للاطباء او لذوي الاختصاص في التجميل وهؤلاء بطبيعة الحال غـ[ير] المستهلك العادي الذي يشتري مسحوق او كريم لترطيب البشرة وللحد من تجعيد الصيدليات او من المحلات التي تبيع مستحضرات التجميل ، وبالتالي فان لكل مستحـ[ضر] مستهلكه الخاص وأيا من هذين المستهلكين لا يمكن ان يقع في اي التباس حول مصـ[در] منتوج ، فالطبيب هو غير المستهلك العادي وله من الفطنة ما يكفي لمعرفة مـ[ا] المسحوق الذي تسوقه المستأنف عليها هو من صناعة المستأنفة ام لا ، أما المستهـ[لك] العادي الذي يشتري مسحوق المستأنف عليها فليس من ذوي الاختصاص ولا درايـ[ة لـ]ـه بالمستحضرات التي يستعملها الاطباء او ذوو الاختصاص ولا من هي الشركة مستحـ[ضر] يمكن بالتالي ان يخلق في ذهنه أي التباس حول مصدر المسحوق الذي يشتـ[ريه] الصيدليات او اماكن التجميل هو عينه مصدر المستحضرات المخصصة لكي تحقـ[ن] البشرة ،

| | هـــامــش |
|---|---|

وحيث في ضوء ما تقدم لا مجال للقول بان ثمة مزاحمة غير مشروع

المزاحمة الطفيلية ،

اما بالنسبة لادلاء المستأنفة من ان عمل المستأنف عليه يشكل المزاحمة الطفيلية

وحيث ان المحكمة بموجب قرارها تاريخ 2013/7/30 كلفت الفريقين بامور معينة سيما مناقشة مدى توافر المزاحمة الطفيلية التي كانت المستأنف عليها اثارتها بداية ،

وحيث ان المستأنف عليها وانفاذا لقرار المحكمة اكدت على عدم توفر المزاحمة الطفيلية كون زبائنها هم غير زبائن المستأنفة واوضحت كيفية اختيارها للعلامتين اللتين سجلتهما وبينت على انها مشتقة من كلمات باللغة الاجنبية تشير الى الجلد والجراحة ، كما اشارت الى انها لم تلاق اي منافسة لمنتوجاتها من قبل شركة Codirep كون هذه الاخيرة تسوق منتجات مختلفة عن منتوجاتها وان زبائنها مختلفون عن زبائنها ، كما اكدت على انها لم تحاول يوما الاستفادة من اي نشاط تقوم به المستأنفة وانه بمطلق الاحول بدأت تستعمل علامتيها قبل ان تأسست شركة LEA.Derm التي انتقلت حقوقها الى الشركة المستأنف وابرزت المستأنف عليها مستندا يتبين منه ان تاريخ تاسيس شركة LEA.Derm هو 2000/11/28 ،

وحيث ان المستأنفة من جهتها اوضحت انها تعزو الى المستأنف عليها استفادتها من جهودها وشهرتها بحيث يظن "المستهلك ايا كان" ان منتجاتها المخصصة في الاصل لاستعمال الاطباء اضحت بمتناول المستهلكين العاديين بمعنى انها تدلي بان التزاحم الطفيلي واقع على نفس الزبائن ،

وحيث سبق لهذه المحكمة وان بينت في اعلاه ان زبائن المستأنف عليها هم غير زبائن المستأنفة اذ ان المستحضرات التي تنتجها هذه الاخيرة هي مخصصة للاطباء وذوي الاختصاص وهؤلاء هم غير شريحة زبائن منتوجات المستأنف عليها الذين لا يفترض ان يكون على معرفة بما يستعمله الاطباء او ذوي الاختصاص في مركز اعمالهم حتى ولو كانوا قد خضعوا لاي علاج من هذا النوع بالاضافة الى انه وعلى فرض ان منتوجات المستأنفة لاقت رواجا وشهرة في بلدان العالم غير ان هذا الرواج اقتصر على هذه البلدان وعلى شريحة من يستعملونها اي الاطباء وذوي الاختصاص ، وليس على المستهلك العادي الذي لا يمكن ان تكون منتوجات المستأنفة بمتناوله .

وحيث تبعا لما تقدم يقتضي القول بانتفاء اي مزاحمة طفيلية تنسبها المستأنفة للمستأنف عليها ،

وحيث تاسيسا على كل ما جاء بينه يكون حكم [...] المستأنف عليها قد وقع موقعه القانوني فيصدق التعليل المبين [...]

| | هـامـش |
|---|---|

لذلــك

وعطفا على قرار المحكمة تاريخ ٣٠/٧/٢٠١٣

تقرّر بالإجماع:

ردّ الاستئناف موضوعا وتصديق الحكم الابتدائي وفقاً لما جاء في المتن وردّ سائر ما زاد أو خالف بما في ذلك طلب الاستعانة بالخبرة الفنية و الحكم بالعطل والضرر وتضمين الجهة المستأنفة النفقات ومصادرة التأمين الاستئنافي ايراداً للخزينة.

قراراً صدر وافهم علنا في بيروت بتاريخ ٢٩/١/٢٠١٥

| الرئيسة المنتدبة (خيرـ) | المستشارة (ابو مراد) | المستشار المنتدب (محمود مكيه) | الكاتبة (ابو هام) |
|---|---|---|---|